UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JACOB B. WEST, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:15 CV 45 DDN |
| | ) | |
| TERRY RUSSELL, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

This action is before the Court upon the petition of Missouri state prisoner Jacob West for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After oral argument on the issues, the Court granted petitioner's habeas petition. Upon motion by respondent for reconsideration, the Court vacated its judgment, because it determined that an evidentiary hearing was necessary to decide the cardinal issues. The Court held the evidentiary hearing on December 13, 2017. For the reasons set forth below, the petition for a writ of habeas corpus is denied. An appropriate Judgment Order is issued herewith.

## I. BACKGROUND

On July 14, 2010, petitioner West was charged in the Circuit Court of Jefferson County, Missouri, with first-degree assault, by shooting Christa Robinson in the knee with a shotgun (Count 1), and armed criminal action regarding the Count 1 offense (Count 2). Petitioner pled not guilty to both charges on November 14, 2011. In exchange for a guilty plea, the state prosecutor offered to recommend concurrent sentences of 12 years' imprisonment in the Missouri Department of Corrections. With the advice of counsel, petitioner accepted and pled guilty on January 9, 2012. Petitioner was sentenced accordingly on April 2, 2012.

In July 2012, petitioner filed a *pro se* Motion to Vacate, Set Aside, or Correct the Judgment or Sentence under Missouri Supreme Court Rule 24.035. Petitioner was appointed counsel, who filed an amended motion that alleged petitioner's plea counsel rendered constitutionally ineffective assistance, because he never advised petitioner about the lesser

included offense of second-degree assault. Petitioner's motion was denied by the Circuit Court without a hearing, because it found that petitioner's plea was knowingly and intelligently made and counsel was not ineffective, because "plea counsel did not have a duty to discuss with Movant every possible aspect of a jury trial." (Doc. 1, Ex. 5 at 1).

Petitioner appealed this decision to the Missouri Court of Appeals, which affirmed the Circuit Court's decision. In doing so, the state appellate court cited the fact that "[petitioner] testified that he understood his right to present a defense, which would include the defense theories set forth in his motion." (Doc. 1, Ex. 6 at 7). Because the court was not "convinced that the possibility of being convicted of a lesser offense to first-degree assault is beyond a lay person's realm of knowledge," it affirmed the denial of post-conviction relief. (*Id.* at 9).

Petitioner filed the instant federal petition for a writ of habeas corpus on January 10, 2015, under 28 U.S.C. § 2254. He alleges one ground for habeas relief, *i.e.*, that his plea was made unknowingly and involuntarily, based upon ineffective assistance of counsel, which violated his constitutional rights under the Sixth and Fourteenth Amendments. Petitioner more specifically alleges that his defense counsel failed to advise him of the possibility of a lesser included, second degree assault charge, the difference between first and second-degree offenses as to the required intent, and that a jury could have been instructed at trial on this lesser included offense. Petitioner claims that there were facts that would have supported a jury instruction on second-degree assault.

## II. FINDINGS OF FACT

After reviewing the record of this action, including the parties' filings and the evidence adduced at the evidentiary hearing, the Court makes the following findings of fact:

1. On November 14, 2011, petitioner Jacob B. West pled guilty to first-degree assault and armed criminal action, in the Circuit Court of Jefferson County, Missouri. At that time he was represented by attorney Theodore Guberman, Esq.

2. Mr. Guberman had been practicing law in Missouri since 1976. He received an undergraduate degree from Harvard University, two graduate degrees from the University of California-Berkeley, and his law degree from Washington University in St. Louis. He began his legal career as a Missouri state public defender and became the head public defender of Jefferson County after 18 months. In 1984, he moved to private practice.

3. Mr. Guberman entered his appearance in petitioner's case shortly after petitioner was charged in 2010, and he represented petitioner until 2012.

4. Throughout his representation of petitioner in this matter, petitioner was free on bond, and Mr. Guberman met with him in the presence of family members approximately ten different times. During his representation of petitioner, Mr. Guberman told him what the State would have to prove to convict him of first-degree assault and armed criminal action. He told petitioner that assault in the second degree was a lesser included offense. More specifically, he told petitioner that there was such a charge as assault in the second degree, that it was a lesser charge than assault in the first degree, that it carried a shorter punishment, that it is a Class C felony, and that it would be much to his advantage if they could convince the prosecutor to amend the charge to second degree assault. Mr. Guberman did not talk with petitioner about asking the jury at a trial for a second-degree assault verdict on the first-degree charge.

5. While Mr. Guberman felt that it was in petitioner's best interest to get the prosecutor to agree to the lesser charge, petitioner initially wanted to present a defense of accident. But as they reviewed the evidence, it appeared to Mr. Guberman that such a defense was not viable. After he heard the witnesses testify credibly against petitioner at the preliminary hearing and reviewed the state's evidence, Guberman settled on a strategy and goal of entering a guilty plea and trying to get probation.

6. Before trial, petitioner was afraid of the risk of a trial on assault in the first degree, which carried a potential term of imprisonment for 30 years, and the risk of conviction on armed criminal action, which required a minimum three years in prison. Attorney Guberman did not discuss what the penalties would be if petitioner was convicted at trial of second degree assault.

7. Attorney Guberman tried for over a year to present mitigating information to the prosecution in an effort to reduce the charge, and to give petitioner an opportunity to reform his behavior so that he would appear appropriate for probation at sentencing. In this effort, petitioner moved from his alcoholic grandparents to live with his other, sober grandparents. He also got a job, stopped drinking, sought counseling, enrolled in school, and started taking an interest in church affairs.

8. Attorney Guberman perceived that petitioner's version of the June 2010 incident changed over time. At first, petitioner claimed that the incident was an accident, that he left the room for some reason and came back, that the shotgun was on a table, that he became irate that

3

any of his guests had handled the shotgun, that he went to put it back in its hiding place, that he stumbled, and the gun discharged. The hiding place was on top of a china cabinet and could only be reached by standing on top of a chair.

9. Attorney Guberman believed that petitioner's version of events was not consistent with other witnesses' statements and that the testimony at the preliminary hearing did not corroborate petitioner's claim that the shooting was an accident. Guberman discussed these observations with petitioner.

10. The prosecution's case included petitioner's statements to the effect that he did not mean to do it, and that he felt he would be going to prison for what he did.

11. Attorney Guberman believed petitioner's idea that the shooting was an accident would be discredited by the testimony of other witnesses: that petitioner retrieved the gun, pointed it at the victim's leg, said "Do you want your knee?," and pulled the trigger. He told petitioner that an accident defense could not overcome such evidence.

12. After attorney Guberman gave petitioner his opinion about the weakness of the accident defense, petitioner did not insist on staying with this defense. Instead, he wanted Mr. Guberman to arrange a guilty plea for him. They had frequently discussed actually going to trial, but petitioner seemed to want to avoid trial and asked the attorney to arrange a plea. They hoped for a sentence of probation rather than prison time, and petitioner was afraid a trial would result in a conviction that would almost certainly result in a prison sentence.

13. In his conversations with the prosecutor, attorney Guberman discussed petitioner pleading guilty to second-degree assault, but the prosecutor would not agree to reducing the charge.

14. Initially the plea offer from the prosecuting attorney included concurrent sentences of 25 years on each count. This offer was reduced to 17 years, and then, after many months, finally to 12 years. This plea offer was only two years above the minimum for first degree assault.

15. Attorney Guberman recommended to petitioner that he take the plea offer, especially when, late in the case, they received an audio recording of the related 911 call. In that recording, the victim is heard screaming in pain in the background in a way that "stunned" everyone when they heard it, including Guberman, petitioner, and petitioner's family. Attorney Guberman believed the recording was "extremely troubling," "very moving," and "hard to listen to." Mr.

Guberman believed that the risk of a jury sentencing petition to more than 15 years and possibly 20 years "was just too great."

16. Attorney Guberman believed petitioner would lose at trial, though he was not unwilling to take the case to trial and would have sought instructions on lesser included offenses. However, he did not think it was probable that a jury would have convicted petitioner on the lesser included offense of second-degree assault. He believed that, even if the defense persuaded the judge to give an instruction on second degree assault, and petitioner was convicted on that offense, he would have possibly received substantial, consecutive sentences for the assault and the armed criminal action.

17. Attorney Guberman believed he could have argued that petitioner's actions were reckless. But he also believed the prosecution could have argued strongly that they were intentional and knowing, and therefore could have subjected petitioner to a conviction for first degree assault.

18. In his discussions with petitioner, attorney Guberman told petitioner about the practical differences between first and second degree assault; and he told petitioner about what state of mind was necessary for a charge of first degree assault.

### III. **STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act of 1996, habeas relief can be granted by a federal court on a claim that has been decided on the merits by a state court only when that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

In order for a state court decision to be "contrary to" Supreme Court precedent, it must arrive at an opposite result than the Supreme Court would reach when confronting facts that are materially indistinguishable from relevant Supreme Court precedent. 28 U.S.C. § 2254(d)(1);

*Williams v. Taylor*, 529 U.S. 362, 405 (2000). When analyzing claims under 28 U.S.C. § 2254(d)(2), "a determination of a factual issue made by a State Court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). In order to rebut this presumption, a petitioner must present clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

Petitioner alleges that he received ineffective assistance of counsel from his plea counsel in violation of the Sixth Amendment. Prevailing on this claim requires petitioner to demonstrate both (1) "that counsel's performance was deficient" and (2) "that deficient performance prejudiced the defense . . . [so] as to deprive the defendant of a fair trial." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court's review of counsel's effectiveness is "highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The same standard applies to allegations of ineffective assistance of counsel in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). When determining whether plea counsel was incompetent, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* In the context of a guilty plea, analysis of prejudicial effect "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process . . . [such that] but for counsel's error, he would not have pleaded guilty and would have instead gone to trial." *Id.* at 59. In order to determine if counsel's constitutionally ineffective performance affected the outcome of the plea process, the Court may consider the strength of a proposed defense. *Id.* at 59-60.

## V. ANALYSIS

The Court's previous analysis of this case was premised on the allegation that petitioner's counsel did not inform him of the relevant defenses, the elements of the offenses charged, and the possibility of lesser included offenses being presented in the trial court, which this Court concluded would constitute ineffective assistance of counsel. However, after conducting the evidentiary hearing, the Court finds that petitioner's plea counsel Theodor Guberman did, in fact, discuss these matters with petitioner. Accordingly, the Court finds and concludes that the performance of petitioner's plea counsel was not deficient.

A layperson cannot be expected to be aware of all legal defenses, and constitutionally effective counsel should advise a client of lesser-included offenses if they are available. *See, e.g., Muhammad v. Steele,* No. 4:13 CV 311 AGF, 2016 WL 1046894, at *6 (E.D. Mo. Mar. 16, 2016). However, in this case defense counsel discussed with petitioner (a) the elements of first-degree assault, including intent; (b) the existence of lesser-included offenses; and (c) the evidence, including statements made by other witnesses that, at the time, militated against proceeding to trial.

Ultimately the issue is whether petitioner's plea represents "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 106 S. Ct. 366, 369 (1985). Defense attorney Guberman met with petitioner numerous times and informed him about what the State would have to prove to convict him of first-degree assault and armed criminal action. Mr. Guberman discussed with petitioner the lesser-included offense of assault in the second degree. Although this discussion was in the context of a plea bargain and not trial, petitioner was nevertheless made aware that there was a lesser offense as assault in the second degree, and that it carried a lesser punishment. Moreover, Mr. Guberman and petitioner discussed the defense of accident, a defense that, under Missouri law, is similar to the mens rea of recklessness that would be considered in an instruction for second-degree assault. *See State v. Bates*, 751 S.W.2d 758 (Mo. 1988) (where a shooting allegedly occurred during a "tussle" between the defendant and the victim, the defense of accident was an alternative to finding defendant committed a purposeful act); *but see State v. White*, 138 S.W.3d 783 (where shooting occurred when defendant waved around shotgun as if playing soldier, and eyewitnesses claimed it was accidental, second-degree assault based on recklessness was still supported because waving was a voluntary act).

Petitioner initially wanted to present an accident defense, but after reviewing the evidence, he determined that he would rather avoid trial. Mr. Guberman referred to two specific pieces of information that appeared to have influenced this decision: (1) multiple credible statements from witnesses reporting that petitioner asked the victim if she "wanted her knee" before shooting her, which would indicate knowledge and purposefulness, and (2) an audio recording of the 911 call that was "extremely troubling," "very moving," and "hard to listen to." Mr. Guberman admitted that a theory of recklessness under second-degree assault was possible, but a conviction on first-degree assault seemed much more likely.

7

Petitioner's defense goal was a plea agreement with no prison time and only probation. After months of negotiation, petitioner agreed to a plea agreement with a recommendation of 12 years in prison, a reduction of 13 years from the 25-year initial offer, hoping for a more lenient sentence after presenting his reformed behavior at the sentencing hearing. While this strategy ultimately did not succeed, considering the evidence, attorney Guberman's experience with the prosecuting attorneys and judges, and the status of the negotiations after several months, this Court concludes that Mr. Guberman's professional acts in representing petitioner were well within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Petitioner argues that a trial would have revealed the level of intoxication of all persons involved in the shooting incident and petitioner's rehabilitation after the incident. He argues that there was a reasonable probability that a judge or jury hearing this information would have sentenced petitioner to fewer than 12 years. But the question is not whether, "had he gone to trial, the result of that trial would have been different than the result of the plea bargain." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (citations omitted). Instead, the Court considers whether petitioner's counsel rendered constitutionally ineffective assistance that led to petitioner pleading guilty, so that petitioner is entitled to relief under 28 U.S.C. § 2254. The answer to that question is no.

Thus, while this Court relies on grounds different from those set forth by the state courts, this Court concludes that the ultimate decision of the Missouri Court of Appeals denying petitioner relief from his conviction and sentence did not violate clearly established federal law and was not based on an unreasonable determination of the facts.

## CONCLUSION

For the reasons set forth above, the petition of Jacob West for a writ of habeas corpus is denied. Petitioner made no substantial showing that he was deprived of a constitutional right. Therefore, a certificate of appealability is denied. 28 U.S.C. § 2253(c)(2).

An appropriate Judgment Order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 10, 2018.